**UNITED STATES of America, Appellee,**

v.

**James T. WHITTED, Appellant.**

No. 92–1181.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 12, 1992.

Decided May 24, 1993.

Order Granting Rehearing and Vacating Opinion and Judgment Aug. 2, 1993.

Michael C. Abourezk, Gregory, SD, argued, for appellant.

Michelle G. Tapken, Sioux Falls, SD, argued (Kevin V. Schieffer and Michelle G. Tapken, on the brief), for appellee.

Before FAGG, Circuit Judge, LAY, Senior Circuit Judge, and BOWMAN, Circuit Judge.

FAGG, Circuit Judge.

James T. Whitted, an American Indian, appeals his jury convictions for three counts of aggravated sexual abuse of a child, 18 U.S.C. §§ 1153(a), 2241(c) (Supp. IV 1986), one count of sexual abuse of a minor or ward, id. §§ 1153(a), 2243, and two counts of incest, id. § 1153(b), S.D. Codified Laws Ann. § 22–22–1(6) (Supp.1992). By admitting a doctor's diagnosis that the alleged victim, Whitted's daughter, L., had been repeatedly sexually abused, the district court committed a plain, prejudicial error that seriously affected the trial's fairness. We thus reverse Whitted's convictions.

In November 1988, after the last act of alleged abuse occurred, L.'s mother took L. to Dr. Heisler and asked the doctor to examine L. for a "possible incestuous situation." Based on medical findings from a pelvic examination, including a small vaginal opening and no tears in the edge of the opening, Dr. Heisler believed L. had not been sexually penetrated.

Two years later, after L. had become sexually active with peers, a tribal investigator referred L. to Dr. Likness for a sexual abuse examination. Dr. Likness examined L. in December 1990, nearly three years after the last alleged act of abuse. L. described the abuse to Dr. Likness in response to his detailed questions. L. also told Dr. Likness about her consensual sexual activity. Contrary to Dr. Heisler's findings, Dr. Likness saw an expanded vaginal opening and only remnants of the hymenal ring during his pelvic examination of L. Dr. Likness's findings confirmed L. had been sexually active.

At the November 1991 trial, L., aged sixteen at the time, testified that her father sexually abused her between 1986 and January 1988 (when her parents separated) and that the abuse occurred as often as every other day. Dr. Likness also testified for the Government. During the Government's case-in-chief, the following exchange occurred between the prosecutor and Dr. Likness:

Q. Assuming that [L.] has stated that she had four acts of sexual intercourse with someone her own age between the time she left her father's home and the time she was examined by you, were your [physical] findings . . . indicative of that type of sexual activity or that additional sexual activity had occurred?

A. . . . [W]e determined the [findings were] very typical of repeated, repeated episodes of penetration. . . .

Q. Including forced penetration?

A. Including forced penetration.

. . . .

Q. Doctor, were your physical findings consistent with the sexual abuse that [L.] described to you having occurred?

A. Yes, they were.

. . . .

Q. What was your final diagnosis, Dr. Likness?

A. My final diagnosis was that [L.] had suffered repeated child sexual abuse.

Whitted testified in his defense and denied that he abused L. in any way. Doctors Heisler and Heinemann also testified for the defense. Dr. Heisler testified she believed L. had not been sexually penetrated before her November 1988 examination. Dr. Heinemann, a pediatrician who did not examine L., testified that there was no way to distinguish whether Dr. Likness's physical findings were the result of consensual sexual activity or abusive sexual activity.

At the outset, we note it was permissible for Dr. Likness to summarize the medical evidence and express his opinion that his medical findings were consistent with L.'s claims of sexual abuse. *United States v. Azure*, 801 F.2d 336, 340 (8th Cir.1986). Indeed, on appeal Whitted does not contest the admission of this testimony. Instead, Whitted argues that because the physical findings were inconclusive of sexual abuse, Dr. Likness's diagnosis was based on what L. told him and thus impermissibly vouched for L.'s credibility. *See id.* at 339–41.

▮ The Government counters that Dr. Likness's diagnosis was admissible under Federal Rule of Evidence 803(4). Rule 803(4), however, is a hearsay exception that allows the admission of statements made by someone to the testifying medical witness for

the purpose of medical diagnosis or treatment. The doctor's own opinion that L. had been sexually abused was not hearsay, Fed. R.Evid. 801(c) (defining hearsay as statement other than one made by declarant while testifying at trial), and thus, Rule 803(4) is clearly inapplicable to the admission of Dr. Likness's diagnosis.

■ Federal Rule of Evidence 702 governs the admission of expert testimony. Under Rule 702, a qualified expert may give opinion testimony if the expert's specialized knowledge would help the jury understand the evidence or decide a fact in issue. *United States v. Arenal,* 768 F.2d 263, 269 (8th Cir.1985). Although an expert opinion is not inadmissible merely "because it embraces an ultimate issue to be decided by the trier of fact," Fed.R.Evid. 704(a), not all expert opinions are admissible. *Arenal,* 768 F.2d at 269. We have held a pediatrician's testimony that an alleged child abuse victim was believable and telling the truth was not admissible under Rule 702 because the doctor put "his stamp of believability on [the victim's] entire story." *Azure,* 801 F.2d at 340–41. The doctor's testimony thus invaded the jury's exclusive province to decide witness credibility. *Id.* at 339–41.

■ We believe *Azure* controls this case. Even though Dr. Likness did not directly state that L. was telling the truth, his diagnosis that L. was repeatedly sexually abused was actually based on his subjective belief of L.'s version of events rather than objective medical findings. *See Loudermill v. Dow Chem. Co.,* 863 F.2d 566, 570 (8th Cir.1988) (expert opinion lacking objective factual support cannot help jury and thus is inadmissible under Rule 702). As the Government acknowledged in a pretrial hearing, the physical findings were inconclusive of sexual abuse because L. had consensual sex before Dr. Likness examined her. Because Dr. Likness's findings were consistent with both consensual sex and sexual abuse, his unequivocal diagnosis that L. was sexually abused essentially told the jury that L. was telling the truth. *See Viterbo v. Dow Chem. Co.,* 826 F.2d 420, 424 (5th Cir.1987) (doctor's opinion based solely on patient's oral history is nothing more than patient's testimony "dressed up and sanctified"). Like the *doctor* in *Azure,* Dr. Likness was not qualified to judge truthfulness. There was a substantial risk that the jury surrendered its own common sense in weighing L.'s testimony and deferred to Dr. Likness's diagnosis without knowing the diagnosis was nothing more than a subjective opinion favoring L. *Azure,* 801 F.2d at 341. Accordingly, Dr. Likness's diagnosis was not admissible expert testimony under Rule 702.

■ Even though Dr. Likness's diagnosis was inadmissible, during the trial Whitted did not object to its admission. Whitted filed a motion in limine seeking to limit Dr. Likness's testimony to his physical findings from L.'s medical examination, but the district court denied the motion "[f]or the time being . . . to be resubmitted [when the] matter is brought to my attention at the trial." The motion in limine thus failed to preserve the issue for appeal, and we review admission of the opinion under Federal Rule of Criminal Procedure 52(b). *See Huff v. Heckendorn Mfg. Co.,* 991 F.2d 464, 466 (8th Cir.1993); *United States v. Kandiel,* 865 F.2d 967, 972 (8th Cir.1989). In a recent decision, the Supreme Court explained that we have authority to correct forfeited errors under Rule 52(b) when (1) there is indeed an error, (2) the error is clear, and (3) the error is prejudicial. *United States v. Olano,* — U.S. —, — – —, 113 S.Ct. 1770, 1777–79, 123 L.Ed.2d 508 (1993). We should exercise our remedial discretion to correct forfeited errors under Rule 52(b) if the error " 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.' " *Id.* at —, 113 S.Ct. at 1779 (quoting *United States v. Atkinson,* 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936)).

Here, admission of Dr. Likness's diagnosis was a clear mistake that affected the trial's outcome. The Government's case against Whitted was not strong. As the Government admits, the case boiled down to a believability contest between L. and Whitted. Dr. Likness's diagnosis that L. had been subjected to repeated acts of child sexual abuse significantly enhanced L.'s believability and unfairly tilted the scales in her favor. The doctor corroborated L.'s story under the

guise of a scientific diagnosis and effectively disposed of the case against Whitted. Under the circumstances, we believe the error seriously affected the trial's fairness, and thus, we should exercise our discretion to correct the error under Rule 52(b).

We will briefly comment on the other issues raised by Whitted that are likely to arise on retrial. Whitted argues the district court erroneously admitted Suzanne Jacobsen's and Dr. Likness's testimony that L.'s bed-wetting, nightmares, and inability to sleep at night were consistent with her claims of sexual abuse. We have approved admission of a clinical psychologist's testimony about general emotional and psychological characteristics of sexually abused children and the children's exhibition of those traits. *United States v. St. Pierre,* 812 F.2d 417, 419–20 (8th Cir.1987). Whitted, however, asserts the Government did not lay a foundation that Ms. Jacobsen, a nurse and physician's assistant, and Dr. Likness, a general medical practitioner, were qualified to give psychological opinions.

■ Because Whitted objected to Dr. Likness's opinion but not to Ms. Jacobsen's opinion, we need not consider whether Ms. Jacobsen was qualified. The trial record, however, does not show Ms. Jacobsen's background in psychiatry, psychology, or sexually abused children. Indeed, Ms. Jacobsen stated L. was the first alleged child abuse victim she had examined. In contrast, the record shows Dr. Likness has attended many child sexual abuse workshops and has treated an average of three child abuse victims a month for the past several years. We believe the Government showed Dr. Likness was qualified to offer his opinion that L.'s bed-wetting, nightmares, and inability to sleep at night were consistent with her claims of sexual abuse.

■ Whitted also asserts Dr. Likness's testimony repeating L.'s statements to him about the abuse was not admissible under Rule 803(4) because the sole purpose of his examination was to construct a criminal case against Whitted. *See* Fed.R.Evid. 803(4) (excepting statements made for purposes of medical diagnosis or treatment from hearsay rule). We agree with Whitted that Dr. Likness may have been consulted only for the purpose of providing expert testimony in a criminal prosecution. Nevertheless, Rule 803(4) applies to statements made for the sole purpose of diagnosis, which includes statements made to a doctor who is consulted only to testify as an expert witness. *United States v. Iron Thunder,* 714 F.2d 765, 772–73 (8th Cir.1983). Thus, L.'s statements to Dr. Likness explaining what happened to her were admissible under Rule 803(4). *Id.* Because L.'s statements about her physical condition were pertinent to a medical diagnosis of sexual abuse, we cannot say the district court abused its discretion in admitting Dr. Likness's testimony repeating L.'s statements about the abuse. *See United States v. Iron Shell,* 633 F.2d 77, 84 (8th Cir.1980), *cert. denied,* 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981).

■ Whitted also argues the district court lacked jurisdiction to consider the counts charging him with aggravated sexual abuse, 18 U.S.C. § 2241(c), and sexual abuse of a minor or ward, *id.* § 2243, because these crimes were not effectively included in the statute giving the United States jurisdiction until November 1988 after the illegal acts allegedly occurred. *See* 18 U.S.C. § 1153 (Supp. IV 1986) (giving United States exclusive jurisdiction over Indian who commits certain crimes, including aggravated sexual abuse and sexual abuse of a minor or ward, within Indian country). We disagree. Since December 1986 when § 2241 and § 2243 and an amendment to § 1153 became effective, federal courts have had jurisdiction over Indians charged with violating § 2241 and § 2243 in Indian country. *United States v. Demarrias,* 876 F.2d 674, 675 (8th Cir.1989). By instructing the jury that it could only consider Whitted's conduct after December 1986 in deciding his guilt, the district court avoided any ex post facto problem.

We reverse Whitted's convictions and remand for further proceedings.

### Order

#### Aug. 2, 1993.

Appellee's petition for rehearing has been considered by the court and is granted. The opinion and judgment of this court filed on May 24, 1993, are vacated. The clerk is directed to set this case for oral argument at the October, 1993, session of court to be held in St. Paul, Minnesota.