**Johnny Lee PRYMER, Plaintiff–Appellant,**

v.

**Kevin OGDEN, Simon Solis, and Mark Hollis, Defendants–Appellees.**

No. 93–1529.

United States Court of Appeals, Seventh Circuit.

Argued April 8, 1994.

Decided July 21, 1994.

---

Andrey Filipowicz, Chicago, IL (argued), for plaintiff-appellant.

Ronald N. Schultz, Kathleen Elliott, Daniel J. McGrail, Douglas P. Scott (argued), City of Rockford Law Dept., Rockford, IL, for defendants-appellees.

Before CUMMINGS and RIPPLE, Circuit Judges, and TINDER, District Judge.*

---

* The Honorable John Tinder, of the United States District Court for the Southern District of Indiana, is sitting by designation.

RIPPLE, Circuit Judge.

Johnny Lee Prymer brought this action under 42 U.S.C. § 1983 in which he alleged that the defendants, Officers Kevin Ogden, Simon Solis, and Mark Hollis, violated his Fourth Amendment rights when they used excessive force to arrest him. A bench trial was held and judgment entered in favor of the defendants. Mr. Prymer now appeals. For the reasons that follow, we affirm.

## I

## BACKGROUND

### A. *Facts*

On January 9, 1991, Johnny Lee Prymer heard over his police scanner that members of the Rockford Police Department were watching for a suspect named Richard Prymer, Mr. Prymer's brother, outside a known drug house. Mr. Prymer hurried to the scene to warn his brother that the police were watching him and that he should not come out of the house with drugs. Mr. Prymer arrived at the scene within six or seven minutes of the first radio transmission. Mr. Prymer pulled up behind a police car and got out. He then walked up to Officer Solis and asked whether the officer had seen Richard Prymer. Officer Solis asked Mr. Prymer to identify himself and to explain why he was inquiring about Richard Prymer. Whether Mr. Prymer complied with the officer's request is disputed. Mr. Prymer continued to walk down the street and to call for his brother. When Officer Solis called him back to the car, Mr. Prymer responded, "If you want me, come and get me." Officer Solis then asked Mr. Prymer to leave the area so that he would not interfere with surveillance. Mr. Prymer got into his car and pulled away.

As he was leaving, Mr. Prymer observed two other officers running after a suspect. Mr. Prymer turned a corner, got out of his car, and briefly spoke with Jeffrey Sims, who was sitting in a parked car nearby. Mr. Prymer then approached Officer Hollis who was walking in Mr. Prymer's direction. The parties dispute the events that followed.

The officers testified, and the district court found, that Officer Hollis asked Mr. Prymer to identify himself. Mr. Prymer did not answer; instead, Mr. Prymer kept walking toward Officer Hollis yelling, "Do you want to f___ with me?". Officer Hollis then radioed to headquarters to see if there were any outstanding warrants for Johnny Prymer.[1] The radio dispatcher confirmed that there was. Mr. Prymer turned to walk toward his car. Officer Hollis instructed Mr. Prymer to stop. Mr. Prymer did not comply, but continued to walk toward his car. Officer Hollis then radioed for assistance and grabbed the door of Mr. Prymer's car to prevent him from shutting it. Officer Hollis ordered Mr. Prymer out of the car. Mr. Prymer refused and said, "F___ you, I don't have to get out of the car." Officer Hollis repeated his request and Mr. Prymer repeated his answer. Officer Hollis then reached into the car, grabbed Mr. Prymer by his left shoulder, and pulled him out of the car. The officer informed Mr. Prymer that there was an outstanding warrant for his arrest; Mr. Prymer denied this accusation. Officer Hollis then attempted unsuccessfully to handcuff Mr. Prymer.

Officer Ogden, who had heard yelling, came to assist Officer Hollis. Officer Ogden grabbed Mr. Prymer's left arm, but Mr. Prymer broke loose and struck Officer Ogden. Because Officer Ogden was wearing a bullet-proof vest, he could not tell whether the blow was a push or a closed-fist punch. Officer Ogden once again tried to take Mr. Prymer's left arm to get the handcuffs on him. Mr. Prymer struggled and eventually all three men were on the ground. Mr. Prymer was on his stomach and kept his hands beneath him to prevent them from being handcuffed. Mr. Prymer also was yelling and kicking.

Officer Solis then arrived to assist the other two officers in getting the cuffs on Mr. Prymer's right hand. After several attempts to get Mr. Prymer's arms from beneath him, Officer Ogden bent over Mr. Prymer, pulled on Mr. Prymer's arm, and gave him a quick jab kick in the ribs. When Mr. Prymer did

---

1. Apparently, Officer Hollis recognized Mr. Prymer from an earlier encounter.

not release his arm, the officer repeated the kick. During this time, Officer Solis was kneeling down and putting weight on the back of Mr. Prymer's legs.

After the officers handcuffed Mr. Prymer, he walked under his own power to the police transport vehicle. Before he was placed in the vehicle, Mr. Prymer made a gurgling noise in his throat as if he were going to spit on Officer Ogden. Officer Ogden struck Mr. Prymer in the forehead with a straight-arm stun technique to redirect Mr. Prymer's head. Mr. Prymer was then placed in the transport vehicle. After Mr. Prymer was in the vehicle, the police dispatcher radioed that he had made a mistake; there was no outstanding warrant for Mr. Prymer.

Mr. Prymer tells a very different story. Mr. Prymer claims that when Officer Hollis initially ordered him out of the car, Mr. Prymer advised Officer Hollis that there was not a warrant for his arrest. Mr. Prymer then got into his car to leave. After Officer Hollis removed him from the car, Mr. Prymer protested that he had done nothing wrong. In response to these protestations, Mr. Prymer states, the officers began to hit him. Mr. Prymer claims that he attempted to put his arms out for the officers to handcuff him; however, instead of handcuffing him, one officer put Mr. Prymer in a chokehold while the other officers continued to beat him. The officers, continues Mr. Prymer, then ordered him to the ground and one officer proceeded to kick him several times while another officer held his legs.

According to Mr. Prymer, after this beating, he walked to the police van under his own power. While at the van, the radio dispatcher informed the officers that there had been a mistake; there was no warrant for Johnny Prymer. Mr. Prymer then claims that he stated, "Wait until my lawyer hears about this." In response to this remark, Officer Ogden hit Mr. Prymer in the forehead with a clenched fist. Mr. Prymer alleges that the officers then discussed the need to charge Mr. Prymer with "something."

Before the officers took Mr. Prymer to headquarters, they conveyed him to the hospital. Mr. Prymer, however, refused treatment. He later claimed that this refusal was because one of the officers was laughing with a hospital security guard and Mr. Prymer was suspicious of their intentions. Mr. Prymer was taken to the Winnebago County Jail; he was released on bond the following day.

Mr. Prymer was charged and convicted of battery upon a police officer. After the conclusion of his criminal trial, Mr. Prymer brought this suit under § 1983 in which he alleged that the defendant officers violated his Fourth Amendment rights. Although Mr. Prymer also had alleged violations of due process in his original and first amended complaints, he did not include these claims in his second amended complaint.

### B. District Court Proceedings

At the time of trial on this action, Mr. Prymer's criminal appeal had not yet been decided. Nevertheless, during the trial of this civil action, the court gave collateral estoppel effect to the conclusion of the state criminal trial court that Mr. Prymer had struck Officer Ogden in the chest. Counsel for Mr. Prymer objected on the grounds that the state criminal court's determination was irrelevant and prejudicial. The court overruled the objection. However, it noted that this recognition had, in its view, a minimum relevance to the overall litigation: "I would point out [that the information upon which the criminal conviction was based] doesn't say how, what type or under what circumstances, nor does it necessarily dispose of Mr. Prymer's case as far as excessive force and arrest is concerned." Tr. 600.

Among the witnesses testifying on behalf of Mr. Prymer was Dr. Kamlesh Ramchandi. Dr. Ramchandi testified that "[Mr. Prymer] possibly had severe contusion [to his ribs] which subsequently healed." Tr. 415. Furthermore, the doctor testified that, with regard to any injury to Mr. Prymer's neck, his own exam and review of a previous doctor's records "did not reveal any loss of range of motion or any objective findings to suggest that he had a fracture of his neck. So my impression was that he had a cervical sprain

which could have been due to any trauma." Tr. 416.

After the conclusion of the trial, the court issued an order containing findings of fact and conclusions of law that largely accepted the officers' version of the facts. In the court's view, Mr. Prymer's claims were brought under the Fourth Amendment and therefore a Fourth Amendment standard should be used to determine whether the officers had violated Mr. Prymer's constitutional rights.

> In *Graham v. Connor*, [490] U.S. [386], 109 S.Ct. 1865 [104 L.Ed.2d 443] (1989), the Court held that the proper standard used in deciding what Constitutional standard governs a free citizen's claim that law enforcement officials used excessive force in the course of making an arrest, investigatory stop or other "seizure" of the person is the Fourth Amendment's "objective reasonableness" standard.

Mem.Order at 12. After stating the standard, the district court found that the

> amount of force used to effectuate Plaintiff's arrest was reasonable under the circumstances present in this cause of action. The court notes that the arrest took place at night in the area of a known drug house. Approximately five to ten people were standing outside of the drug house watching the events unfold. Plaintiff was loud and belligerent and crying out for help. Defendant Solis testified that many of the onlookers were wearing long coats and had their hands in their pockets. Such was cause for concern for the officers' safety.
>
> Plaintiff was also actively resisting his arrest. Most notable in showing this is the fact that Plaintiff was found guilty in State court of aggravated battery in violation of Illinois Revised Statutes, chapter 38, paragraph 12–4(b)(6) (1991). This court is bound through the doctrine of collateral estoppel by that finding. Furthermore, if Plaintiff had cooperated in being handcuffed, the entire incident would have been over in a matter of minutes as the radio dispatcher would have been able to contact Defendants regarding the mistaken warrant information. The court notes that Plaintiff was not hit or kicked once Defen-

dants had him under control and in handcuffs.

> Finally, Plaintiff posed a risk of flight as his car was close at hand.... Accordingly, the court finds, using the objectively reasonable standard, that Defendants were justified in exercising the amount of force used to realize Plaintiff's arrest.

*Id.* at 14–15.

Finally, the court addressed Officer Ogden's "blow" to Mr. Prymer's head. The court found that this "was also rational under the objectively reasonable standard." *Id.* at 15. The court found that Mr. Prymer was preparing to spit on Officer Ogden and that the open-hand stun technique was a reasonable response to prevent Mr. Prymer's actions. This was especially true because Mr. Prymer was not injured from the officer's actions. *Id.* at 15–16.

Mr. Prymer appeals the judgment of the district court.

## II

## DISCUSSION

### A. *Collateral Estoppel*

#### 1.

Mr. Prymer first argues that the district court erred when it gave collateral estoppel effect to the state criminal trial court's finding that Mr. Prymer struck Officer Ogden. Specifically, Mr. Prymer argues that, because his conviction was on appeal at the time of the civil trial, it was not a final decision for the purposes of collateral estoppel.

██ Collateral estoppel will prevent the relitigation of an issue only when four prerequisites are met. First, the party against whom collateral estoppel is asserted must have been fully represented in the prior litigation. Second, the precluded issue must be identical to the issue involved in the prior litigation. Third, the issue must have been actually litigated and decided on the merits. Finally, the resolution of the issue must have been necessary to the court's judgment. *Gray v. Lacke*, 885 F.2d 399, 406 (7th Cir. 1989), *cert. denied*, 494 U.S. 1029, 110 S.Ct.

1476, 108 L.Ed.2d 613 (1990). With regard to the third prerequisite, the party against whom the prior decision is invoked must have had a " 'full and fair opportunity to litigate' that issue in the prior case." *Id.* Mr. Prymer submits that, because he had filed a timely notice of appeal in his criminal case and because the appeal was pending at the time the court gave preclusive effect to the criminal court conviction, the district court was barred from using collateral estoppel.[2]

 In evaluating Mr. Prymer's submission, we encounter a serious threshold problem: he never presented the objection to the district court. When the district court ad-

mitted the findings of the criminal trial court, counsel for Mr. Prymer objected on the grounds that the evidence was irrelevant and that the probative value was outweighed by the prejudice to Mr. Prymer. Tr. 599. Counsel never objected on the ground that the elements of collateral estoppel were not met. The Federal Rules of Evidence require a litigant to make a timely and specific objection when evidence is admitted. Fed.R.Evid. 103.[3] " '[A] specific objection made on the wrong grounds and overruled precludes a party from raising a specific objection on other, tenable grounds on appeal.' " *Williams v. Jader Fuel Co., Inc.,* 944 F.2d

2. As Mr. Prymer asserts in his brief, our decision in *Gray* does contain the broad statement that a full and fair opportunity to litigate involves the right to appeal an adverse decision. 885 F.2d at 406. We believe, however, that this case must be read in the context of the procedural posture presented to the court in that case. The court was presented with a situation in which the party had not prevailed in the district court, and the district court had addressed her equal protection and First Amendment contentions. On appeal, this court had resolved the case without addressing those issues. In *Gray,* we held that those issues were not precluded by the doctrine of collateral estoppel in the later litigation because appellate review of those issues had been precluded by the court's decision in the earlier appeal to decide the matter without addressing them. In reaching that decision, this court relied upon those cases that hold that nonfinal interlocutory orders do not have collateral estoppel effect. Although one other case from our circuit has stated, in passing, a view of finality similar to that in *Gray; see Colby v. J.C. Penney Co., Inc.,* 811 F.2d 1119, 1124 (7th Cir.1987) ("[S]ince the appeal from the Detroit decision is pending, that decision is not final for purposes of allowing a defense of res judicata to be sustained in the present suit."), it is clear that the court has adhered to the general rule in American jurisprudence that a final judgment of a court of first instance can be given collateral estoppel effect even while an appeal is pending. *See Williams v. C.I.R.,* 1 F.3d 502, 504 (7th Cir.1993) ("What is sure is that a judgment final in the trial court may have collateral estoppel effect even though the loser has not exhausted his appellate remedies."). This has been the approach of our circuit for many years. *See Kurek v. Pleasure Driveway & Park Dist., Etc.,* 557 F.2d 580, 595 (7th Cir.1977) (stating that pendency of an appeal does not suspend the operation of a final judgment for collateral estoppel purposes), *vacated on other grounds,* 435 U.S. 992, 98 S.Ct. 1642, 56 L.Ed.2d 81 (1978).

In this case, the mandate of 18 U.S.C. § 1738 (requiring federal courts to give full faith and

credit to the judgments of state courts) controls the analysis, and we are required to give the final criminal judgment of the trial court of Illinois the same effect as it would have in a subsequent Illinois proceeding while it was on appeal. *See Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 80–81, 104 S.Ct. 892, 895–896, 79 L.Ed.2d 56 (1984). There is authority in Illinois that is compatible with the general rule that the final judgment of a trial court may be given collateral estoppel effect while on appeal. *See Illinois Founders Ins. Co. v. Guidish,* 248 Ill. App.3d 116, 187 Ill.Dec. 845, 849, 618 N.E.2d 436, 440 (1993) ("[A] final judgment can serve as the basis to apply the doctrines of res judicata and collateral estoppel even though the judgment is being appealed."). There is, however, authority to the contrary from the Supreme Court of Illinois which appears to place this position in question. *See Ballweg v. City of Springfield,* 114 Ill.2d 107, 102 Ill.Dec. 360, 499 N.E.2d 1373 (1986) ("For purposes of applying the doctrine of collateral estoppel, finality requires that the potential for appellate review must have been exhausted."). None of these cases were criminal cases.

The parties before us do not contest that the district court erred in giving effect to the criminal court judgment. We are without the benefit of comprehensive briefing on this matter from the parties and resolution of the matter is not essential to our decision. We therefore need not decide definitively the content of Illinois law.

3. Federal Rule of Evidence 103 reads in pertinent part:

(a) Effect of erroneous ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

(1) Objection. In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context; ...

1388, 1405 (7th Cir.1991) (quoting 1 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 103[02], at 103–25 to –26 (1990)), *cert. denied,* — U.S. ——, 112 S.Ct. 2306, 119 L.Ed.2d 228 (1992); *see also United States v. Field,* 875 F.2d 130, 134 (7th Cir.1989) ("Neither a general objection to the evidence nor a specific objection on other grounds will preserve the issue on review."). Because Mr. Prymer's counsel failed to object to the evidence on the ground he now sets forth, this argument has been waived.

■■ Mr. Prymer contends that, even if he waived his argument, we still can recognize it under the doctrine of plain error. This argument is equally unavailing. This court has held that plain error generally is not cognizable in a civil case. *See Maul v. Constam,* 928 F.2d 784, 787 (7th Cir.1991) ("[T]his court has decided that the plain error doctrine does not apply to civil cases unless the error concerns subject matter jurisdiction."). When an evidentiary ruling is the source of error, however, there is a very narrow exception to the general rule. We have stated:

> [T]he plain error doctrine may be available to review evidentiary rulings to which no objection was made at trial if a moving party can demonstrate (1) that exceptional circumstances exist, (2) that substantial rights are affected, and (3) that a miscarriage of justice will result if the doctrine is not applied.

*Deppe v. Tripp,* 863 F.2d 1356, 1362 (7th Cir.1988). Mr. Prymer has made no effort to show this court how his case falls within this narrow exception.[4] He simply states that the "fairness" of the instant proceedings is affected because under Illinois law "collateral estoppel effect will be given to a judgment only when the potential for appellate review has been exhausted." Reply Br. at 2. Mr. Prymer does nothing more than restate a legal standard. Such a conclusory assertion cannot take the place of analysis. This court will not expend its own resources to make Mr. Prymer's arguments for him. *See United States v. Berkowitz,* 927 F.2d 1376, 1384

(7th Cir.) ("A party urging us to reverse a district court's judgment has an obligation to argue why we should reverse that judgment, and to cite appropriate authority to support that argument."), *cert. denied,* — U.S. ——, 112 S.Ct. 141, 116 L.Ed.2d 108 (1991). Therefore, Mr. Prymer has waived any argument based on plain error.

2.

■ However, even if Mr. Prymer had raised this objection at trial or properly had pursued his plain error argument on appeal, we would have to conclude that the district court's use of collateral estoppel is harmless error. The district court relied upon many factors to determine whether the officers' use of force was objectively reasonable: the arrest at night, near a known drug house; the number of suspicious onlookers who might heed Mr. Prymer's calls for help; the risk of flight posed by Mr. Prymer; and, finally, Mr. Prymer's active resistance of arrest. With regard to the last factor, the district court stated that "most notable in showing this is the fact that Plaintiff was found guilty in State court of aggravated battery...." Mem.Order at 14. However, the state criminal trial court's conclusion was not the only evidence considered for this factor. The district court stated:

> Furthermore, if Plaintiff had cooperated in being handcuffed, the entire incident would have been over in a matter of minutes as the radio dispatcher would have been able to contact Defendants regarding the mistaken warrant information. The court notes that Plaintiff was not hit or kicked once Defendants had him under control and in handcuffs.

*Id.* at 15. The state criminal court conviction therefore only helped to establish one factor of the many that the court considered in determining that the force was reasonable. Because the state criminal court conviction played such a minor role in the magistrate judge's analysis, we believe any error is harmless.

---

4. In fact, Mr. Prymer does not even cite this court's standard for recognizing plain error in a civil case; he instead gives the standard applied by the Eighth Circuit. *See United States v. Whitted,* 994 F.2d 444 (8th Cir.), *vacated on reh'g on other grounds,* 11 F.3d 782 (8th Cir.1993).

### B. *Fourth or Fourteenth Amendment Analysis*

Mr. Prymer next argues that the district court employed the wrong analysis in determining whether his constitutional rights were violated by the actions of the officers.[5] Mr. Prymer contends that, when Officer Ogden struck him with the open-hand stun technique, he was already in custody. Consequently, the district court should have used the due process standard, applicable to pretrial detainees, instead of the Fourth Amendment standard, applicable to arrest situations.

■ As he had with his collateral estoppel argument, Mr. Prymer failed to make this argument to the district court. Mr. Prymer's second amended complaint alleged only violations of his Fourth Amendment rights and not his due process rights.[6] Indeed, at oral argument, counsel for Mr. Prymer admitted that the Fourth Amendment theory was the only theory of relief presented in the complaint, in Mr. Prymer's proposed findings of fact, or in the arguments made to the district court after the conclusion of evidence. Because Mr. Prymer did not raise this theory of relief in the district court, we shall not recognize it now on appeal. *See Ohio Casualty Ins. Co. v. Rynearson,* 507 F.2d 573, 582 (7th Cir.1974) ("The principle that new issues or new bases of liability may not be raised for the first time on appeal is too well known to require citation.").[7]

### C. *Sufficiency of the Evidence*

■ Finally, Mr. Prymer claims that the evidence was not sufficient to support the district court's conclusion that the officers actions were objectively reasonable. This ar-

gument takes two forms: an attack on the district court's factual findings and an attack on the legal conclusions drawn from those findings. First, Mr. Prymer contends that the factual findings of the district court are clearly erroneous. He submits that the court disregarded Dr. Ramchandi's testimony that Mr. Prymer possibly had suffered injury and concluded to the contrary that in fact he had suffered no injury. However, the district court was entitled to take Dr. Ramchandi's opinion for what it was worth—an ·equivocal opinion by a physician who had viewed the most pertinent information secondhand. Furthermore, the district court also was entitled to consider other relevant facts—e.g., that Mr. Prymer both walked under his own power to the police vehicle and refused medical treatment after the events of that evening. The same is true of the court's other factual findings. "[T]he district judge ... evaluates the credibility of witnesses. He or she is in a unique position to do so and we will not disturb his or her determination unless it is without foundation." *United States v. Yanez,* 985 F.2d 371, 374 (7th Cir. 1993). We, therefore, cannot say that the district court's decision to adopt the version of the events supplied by the officers was clearly erroneous.

■■ Second, Mr. Prymer attacks the district court's legal conclusion that Officer Ogden's actions were objectively reasonable. He cites *Meyer v. Robinson,* 992 F.2d 734 (7th Cir.1993), for the proposition that an officer may not take any measure necessary to prevent being spat upon. In *Meyer,* an officer had wrapped gauze around a suspect's mouth to prevent being spat upon. We determined that, in that case, there was an

---

5. Although Mr. Prymer challenged the legality of the arrest itself in his second amended complaint, he does not raise this challenge on appeal. Mr. Prymer also never argues to this court, or below, that his resistance to an unlawful arrest was justified. Instead, Mr. Prymer rests his claim for relief on the officers' actions in the face of his complete cooperation.

6. Mr. Prymer previously had alleged violations of due process in his original and first amended complaints. These claims were dropped in the second amended complaint, in all likelihood in response to the defendants' motion to dismiss these claims. However, Mr. Prymer cannot rely

on the original complaints to further this argument because " '[i]t is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect.' " *Manning v. Ashland Oil Co.,* 721 F.2d 192, 197 (7th Cir.1983) (quoting *International Controls Corp. v. Vesco,* 556 F.2d 665, 668 (2d Cir.1977), *cert. denied,* 434 U.S. 1014, 98 S.Ct. 730, 54 L.Ed.2d 758 (1978)).

7. Mr. Prymer does not urge us to recognize this claim under the plain error doctrine, and any such argument would be unavailing.

issue of fact surrounding the incident that could not be resolved on summary judgment, namely, whether injury actually had resulted from the officer's actions. We did not resolve the issue of whether the actions were objectively reasonable. Consequently, *Meyer* is of little assistance to Mr. Prymer. In this case, we agree with the district court that it was reasonable for an officer not to want to be spat upon. Furthermore, we cannot say that Officer Ogden's reaction to Mr. Prymer's attempt to spit on him was objectively unreasonable in the context of this case.

### Conclusion

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED.