**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

SANDRA K. SHAFFER, Surviving
Widow of and Personal
Representative of the Estate of the
Deceased, Randall L. Shaffer;
SANDRA K. SHAFFER, Mother and
Next Friend of Alayna Brooks
Shaffer and Surviving Minor Child
of Randall Shaffer,
Plaintiffs-Appellants,

v.

No. 94-2546

J. H. FLETCHER & COMPANY,
Defendant & Third Party
Plaintiff-Appellee,

and

JOHN DOE; JOHN DOE,
Defendants,

v.

C & S TOOL COMPANY,
Third Party Defendant.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Frank A. Kaufman, Senior District Judge.
(CA-93-1506-K)

Argued: January 31, 1996

Decided: April 30, 1996

Before HALL and MURNAGHAN, Circuit Judges, and STAMP,
Chief United States District Judge for the Northern District
of West Virginia, sitting by designation.

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Bernard R. Corbett, LAW OFFICE OF BERNARD R. CORBETT, Alexandria, Virginia, for Appellants. George Christopher Courtot, DUNAWAY & CROSS, Washington, D.C., for Appellee. **ON BRIEF:** Matthew F. Hall, DUNAWAY & CROSS, Washington, D.C., for Appellee. Michael J. Farrell, JENKINS, FENSTERMAKER, KRIEGER, KAYES & FARRELL, Huntington, West Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

In this diversity action for wrongful death, Sandra K. Shaffer appeals an order of the district court denying her motion for a new trial. The court had previously entered judgment on the jury's verdict for the defendant, J.H. Fletcher & Co.

Mrs. Shaffer's husband was killed in a coal mining accident. Prior to trial, the Mine Safety and Health Administration investigated the accident and prepared a report of its findings. At trial, the court admitted a redacted version of the MSHA report into evidence. Shaffer maintains that a new trial is warranted because the jury may have inadvertently seen unredacted copies of the report. The district court became aware of the irregularity during trial, and it attempted to fashion a cure. Inasmuch as Shaffer failed to object to the court's proposed remedy, we are not inclined to now second-guess its efficacy. We thus affirm the judgment below.

2

I.

A.

On April 11, 1990, Randall L. Shaffer was killed while installing roof bolts at the Mettiki Coal Corporation's underground mine in Garrett County, Maryland. A portion of the roof collapsed and pinned Randall against the roof bolting machine, which had been manufactured by Fletcher. Randall's widow filed the instant action against Fletcher on behalf of herself, her daughter, and her husband's estate, asserting claims of negligence and strict liability under Maryland law.

MSHA investigators concluded that the accident was caused by the lack of temporary roof supports installed at the prescribed intervals. Mining cuts made too long and too deep into unsupported areas of uncertain integrity were listed as contributing factors. The MSHA report, consisting of approximately eight pages, stated that Randall's co-workers had noticed no mechanical or operational problems with the roof bolting machine.

A half-page summary entitled "Violations," immediately following the investigators' conclusions, noted that Mettiki had been, as a result of the investigation, formally cited for transgressions of MSHA safety regulations directly relating to the stated causes of the accident. The infractions included (1) mining through and into an unsupported area of a crosscut, (2) allowing the bolting machine's automated temporary roof support system to be engaged more than five feet from another support, and (3) exceeding the cutting depth specified by the approved roof control plan under known adverse roof conditions, in contravention of, respectively, 30 C.F.R. §§ 75.203(d), 75.209(d), and 75.220.

B.

Prior to trial, the district court ruled that Fletcher could introduce the MSHA report into evidence, but with the "Violations" section redacted. The redacted report was labeled "Defendant's Exhibit 2," and copies were included in exhibit books prepared by Fletcher's counsel and issued, by leave of the court, to the individual jurors. At

3

the trial's outset, the jury was told to refrain from looking at any portion of the defendant's exhibit book -- or of a similar book containing copies of Shaffer's exhibits -- until the court instructed it to do so.

At the close of the case, as the lawyers and the courtroom deputy clerk were gathering the books and larger exhibits for removal to the jury room, Fletcher's attorney noticed that an abridged, but unredacted, copy of the MSHA report had been included within the redacted version contained in the juror's books. Upon being notified of the error, the court brought the jurors back into the courtroom and instructed the clerk to assist them in removing the unredacted copy, spontaneously designated "Defendant's Exhibit 2A for Identification," from their exhibit books. The court explained that the removal was necessary to correct a "mechanical" error, and it admonished the jurors not to read Exhibit 2A as they were removing it. From initial notification until the actual removal, the court asked counsel no fewer than seven times whether the specific intermediate step taken was satisfactory. In each instance, both lawyers replied in the affirmative.

After the jury had finally retired to its deliberations, it was discovered that the baby had, in effect, been thrown out with the bath water; in removing Exhibit 2A, one or more jurors had inadvertently also discarded the copy of Exhibit 2 which had been designated for inclusion in the books. The court, after again consulting both lawyers,* called the jury back into the courtroom and instructed it to refer only to the actual Exhibit 2, which had been taken to the jury room apart from the exhibit books.

The jury returned a verdict for Fletcher on all claims. Shaffer moved for a new trial, citing the exhibit snafu. The district court denied the motion, and Shaffer appeals.

_____

*At this point, Shaffer's lawyer finally objected, but only on the narrow ground that sending the missing copies of Exhibit 2 back to the jury room would, he believed, unduly emphasize them. Inasmuch as some of his client's trial exhibits had not been copied for inclusion in the exhibit books, counsel proposed that copies be made of those exhibits and delivered to the jury simultaneously with the copies of Exhibit 2. The district court declined this suggestion, apparently because the time required to copy Shaffer's exhibits would have delayed further deliberations.

4

II.

Shaffer's difficulty on appeal lies in her lawyer's failure to oppose the district court's efforts to remedy the jurors' potential exposure to the excluded evidence. Instead, counsel merely lodged an objection to the court's attempt to ensure that the jury had sufficient access to evidence that indisputably was properly before it. See note *, supra.

In civil cases, federal appellate courts rarely disturb a judgment to correct an error that has not been properly preserved by a timely objection. See Champagne v. United States, 40 F.3d 946, 947 (8th Cir. 1994) (error must have "almost surely affected the outcome of the case") (citations omitted); Prymer v. Ogden, 29 F.3d 1208, 1214 (7th Cir.) (plain errors are generally not cognizable in civil cases, although evidentiary rulings may be susceptible to plain error analysis where exceptional circumstances exist, substantial rights are affected, and a miscarriage of justice would otherwise result) (citations omitted), cert. denied, 115 S. Ct. 665 (1994); Dennis v. General Elec. Corp, 762 F.2d 365, 367 (4th Cir. 1985) ("The failure to object at the proper time will be overlooked on appeal only if exceptional circumstances exist such as when the error is so obvious or so serious that the public reputation and integrity of the judicial proceeding is impaired.") (citation omitted).

We assume, as the district court did, that the jury was indeed aware of the previously redacted "Violations" section of the MSHA report. Although this information may have imbued the report with something akin to an official imprimatur, the investigators' opinions contained therein as to the cause of the accident, which had been properly admitted into evidence, were incalculably more devastating to Shaffer's theory of the case. We are, therefore, altogether confident that the jury's exposure to the report in its entirety did not "almost surely affect" the outcome of the proceedings, and that no miscarriage of justice would result from upholding the jury's verdict. Moreover, no exceptional circumstances exist that would excuse Shaffer's failure to object. Indeed, this case presents quite the opposite scenario. Shaffer's lawyer bypassed at least seven opportunities to intervene in the district court's proposed course of action, either by suggesting improvements, objecting, or moving for a mistrial; instead, he chose

5

to stand silent. Though he has finally found his voice on appeal, that ship has long since sailed.

The judgment of the district court is affirmed.

<u>AFFIRMED</u>

6