

FILED
Apr 15 2015, 9:06 am

CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Charles L. Berger<br>Berger & Berger, LLP<br>Evansville, Indiana | Keith W. Vonderahe<br>Clay W. Havill<br>Molly E. Briles<br>Ziemer Stayman Weitzel & Shoulders, LLP<br>Evansville, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Mike Winters,<br><br>*Appellant-Plaintiff,*<br><br>v.<br><br>City of Evansville,<br><br>*Appellee-Defendant* | April 15, 2015<br><br>Court of Appeals Case No.<br>82A01-1409-CT-378<br><br>Appeal from the Vanderburgh Circuit Court<br><br>The Honorable David D. Kiely, Judge<br><br>Case No. 82C01-1308-CT-410 |

**Crone, Judge.**

## Case Summary

While working a second job as a school security officer, Corporal Mike Winters, a thirty-year veteran of the Evansville Police Department ("EPD"), grabbed a sixteen-year-old student's crotch in an apparently misguided attempt

to teach him about the dangers of fighting. The student's family did not press criminal charges but did file an internal affairs complaint against Winters. EPD's chief issued a personnel order finding that Winters committed eight violations of EPD's rules and regulations, suspending him for twenty-one days without pay, and recommending his termination. Winters appealed the order to the Evansville Police Merit Commission ("the Merit Commission"). After a disciplinary hearing, the three-member Merit Commission found that Winters committed seven of the eight rule violations, and it voted two to one to affirm his suspension and terminate his employment with EPD. Winters appealed the decision by filing a complaint against the City of Evansville ("City") in the trial court. Both parties moved for summary judgment. The trial court granted the City's motion and denied Winters's motion.

[4]     On appeal, Winters contends that the Merit Commission's decision is not supported by substantial evidence and is arbitrary and capricious, which is another way of saying that the decision is patently unreasonable. Winters raises three issues: (1) the chief's motivation for seeking termination was improper; (2) the two commissioners who voted in favor of termination based their decision on improper considerations; and (3) the punishment is disproportionate to the conduct. We resolve these issues as follows: (1) because the chief did not participate in the Merit Commission's decision to terminate Winters, his motivation for seeking termination is irrelevant; (2) the commissioners did not base their decision on improper considerations; and (3) the Merit Commission's decision to terminate Winters for his unjustified and

unprovoked grabbing of the student's crotch is supported by substantial evidence and is not arbitrary and capricious, or patently unreasonable. Therefore, we affirm.

## Facts and Procedural History[1]

The relevant facts are undisputed. As of May 16, 2013, Winters had been employed as an EPD officer for thirty years. Winters had a second job as a security officer for the Evansville Vanderburgh School Corporation ("EVSC") at its Academy for Innovative Studies ("AIS"), which serves students who had behavioral problems in other schools. On that date, Winters was working at AIS in full police uniform when he heard loud noises coming from a classroom in which approximately five students were serving in-school suspension. Winters entered the classroom and told the students to calm down and take their seats, which they did.

The students started talking about fighting. Winters told them not to fight and cautioned them about the consequences of fighting. A sixteen-year-old student, Z.P., said that he would fight someone smaller than himself. Winters grabbed Z.P.'s crotch and said, "What if someone did this to you?" Appellee's App. at

---

[1] We held oral argument on March 18, 2015, at DePauw University in Greencastle. We thank the faculty, staff, and students for their hospitality, and we thank counsel for their participation.

344.[2] Z.P. replied, "Dude, you grabbed my balls." *Id.* at 26, 344.[3] Both Z.P. and Winters reported the incident to AIS's principal, who contacted EVSC's security director, who contacted EPD. The incident was also reported to Z.P.'s parents, who declined to press criminal charges but did file an internal affairs complaint against Winters.[4]

[7] On May 23, 2013, EPD Chief Billy Bolin issued a personnel order finding that Winters had committed eight violations of EPD rules and regulations relating to upholding and obeying laws, ordinances, and regulations; fostering good public relations and maintaining respect for the department; and inappropriately touching a juvenile. The order also suspended Winters for twenty-one days without pay and recommended that he be terminated from EPD. Winters appealed the order to the three-member Merit Commission, which held a hearing on July 22, 2013.[5] At the conclusion of the hearing, the

[2] We appreciate that the City included the entire transcript of the Merit Commission's hearing in its appellee's appendix, which allowed us to consider the whole picture here. Winters included less than a third of the transcript in his appellant's appendix, and he failed to include a copy of the Merit Commission's decision.

[3] Winters's pedagogical philosophy is best described as, "Cuius testiculos habes, habeas cardia et cerebellum."

[4] Z.P.'s mother testified that she and Z.P.'s father let Z.P. decide whether Winters should be criminally charged because Z.P. would be the one to testify at trial. She explained that Z.P. "was not comfortable with that, he did not think that he would want to do that, so at that time, we just let that go." Appellee's App. at 87.

[5] Under current Indiana law, a police department merit commission must consist of five commissioners, two of which are appointed by the governmental unit's executive, one by the unit's legislative body, and two by the active members of the police department. Ind. Code § 36-8-3.5-6. We presume that the City's three-member commission was grandfathered under Indiana Code Section 36-8-3.5-1 and that the City's executive, legislative body, and police department members each appointed one member to the commission.

Merit Commission found that Winters committed seven of the eight alleged rule violations and voted two to one to affirm his suspension and terminate his employment with EPD. Commission President Adrian Brooks and Commissioner John Hegeman voted in favor of suspension and termination; Commissioner Mike Cook opined that suspension was "appropriate" but did not support termination. *Id.* at 228. The Merit Commission issued a written decision with factual findings consistent with the foregoing.

[8] Winters appealed the Merit Commission's decision by filing a complaint against the City in the trial court pursuant to Indiana Code Section 36-8-3-4(e) ("The reasons for the suspension, demotion, or dismissal of a member of the police or fire department shall be entered as specific findings of fact upon the records of the [Merit Commission]. A member who is suspended for a period exceeding five (5) days, demoted, or dismissed may appeal the decision to the circuit or superior court of the county in which the unit is located. However, a member may not appeal any other decision."). Both parties moved for summary judgment. The trial court denied Winters's motion and granted the City's motion, finding no genuine issue of material fact and concluding as a matter of law that the Merit Commission's written findings and decision to terminate Winters's employment were based upon substantial evidence, not arbitrary or capricious, and "not in violation of any constitutional, statutory or legal principle." Appellant's App. at 13.

[9] Winters now appeals. Additional facts will be provided as necessary.

# Discussion and Decision

[10]  "Judicial review of administrative decisions is very limited." *City of Indianapolis v. Woods*, 703 N.E.2d 1087, 1090 (Ind. Ct. App. 1998), *trans. denied* (1999).

> Deference is to be given by the reviewing court to the expertise of the administrative body. Discretionary decisions of administrative bodies, including those of police merit commissions, are entitled to deference absent a showing that the decision was arbitrary and capricious, or an abuse of discretion, or otherwise not in accordance with law. Further, review is limited to determining whether the administrative body adhered to proper legal procedure and made a finding based upon substantial evidence in accordance with appropriate constitutional and statutory provisions. The reviewing court may not substitute its judgment for that of the administrative body or modify a penalty imposed by that body in a disciplinary action, without a showing that such action was arbitrary and capricious.

> The challenging party has the burden of proving that an administrative action was arbitrary and capricious. An arbitrary and capricious decision is one which is patently unreasonable. It is made without consideration of the facts and in total disregard of the circumstances and lacks any basis which might lead a reasonable person to the same conclusion. Substantial evidence is that relevant evidence which a reasonable mind might accept as adequate to support a conclusion.

*Id*. at 1090-91 (citations omitted).

[11]  The trial court initially reviewed the Merit Commission's termination decision.

> In order to properly adjudge whether the initial review was erroneous, we necessarily look through its decision to consider the validity of the Merit [Commission's] determination. In so doing, we use the same standard which was required to be applied in the initial review, as to those facts and conclusions addressed by the Merit [Commission].

*Id*. at 1091 (footnote omitted). "A court reviewing a police officer disciplinary action may not judge witness credibility or weigh conflicting evidence in

determining whether there was substantial evidence to support the action." *Jandura v. Town of Schererville*, 937 N.E.2d 814, 819 (Ind. Ct. App. 2010), *trans. denied* (2011).

[12] Winters raises three issues: (1) Chief Bolin's motivation to seek termination was improper; (2) the two commissioners who voted to suspend and terminate him improperly based their decision on matters outside the record; and (3) the punishment (a twenty-one-day unpaid suspension and termination after thirty-plus years of service) is disproportionate to the conduct (briefly grabbing the crotch area of a sixteen-year-old student "to demonstrate what could happen if someone attacks you and you are not prepared," Appellant's Br. at 5). To put it more concisely, Winters contends that the Merit Commission's decision is arbitrary and capricious and not supported by substantial evidence.[6]

## Section 1 – Chief Bolin's motivation to seek Winters's termination is irrelevant because he did not participate in the ultimate disciplinary decisionmaking.

[13] Regarding Chief Bolin, Winters complains that his recommendation for termination was based on "a prior incident in which his department's public information officer made public statements against the Evansville Vanderburgh School Corporation for their failure to notify the Evansville Police Department

---

[6] Winters also suggests a due process argument, which is essentially a claim that the decision is not supported by substantial evidence and was based on improper considerations. We address his argument in that context.

of a sexual child predator," and thus "he had other pressures playing upon him." Appellant's Br. at 7. We note, however, that Chief Bolin did not participate in the ultimate decision to terminate Winters's employment, and therefore his motivation for seeking termination is irrelevant. *See Jandura*, 937 N.E.2d at 819-20 (finding suspended officer's claims regarding chief's "alleged political motivations" irrelevant: "Although Chief Dowling initiated the disciplinary action, it was the Board commissioners who ultimately decided whether and how severely to discipline Jandura. Even if Chief Dowling was motivated by political considerations to file the disciplinary charge against Jandura, he was not the ultimate decisionmaker; the Board commissioners were. Indeed, we assume that one of the primary statutory purposes for the independent Board's very existence is to remove the discipline of police officers from the 'politics' of the stationhouse.").[7]

## Section 2 – The commissioners did not base their decision on improper considerations.

[14] Winters takes issue with the following statement from Commissioner Hegeman:

> I've been concerned throughout the hearing with the testimony from witnesses in support of Corporal Winters and Corporal Winters himself talking about, as counsel for the department mentioned, "these kids". It was almost as if because these children are struggling and they're at the AIS facility, that somehow they're not entitled to be

---

[7] Winters further complains that Chief Bolin "only had two and one-half (2 ½) years of supervisory experience and never directly supervised" him. Appellant's Br. at 6. These facts are also irrelevant to the Merit Commission's decision.

> treated in the same way that children at Bosse, Memorial, Mater Dei, North, Central are treated or supposed to be treated.

Appellant's Br. at 17 (quoting Appellant's App. at 78). Winters argues that "[t]his statement clearly reflects bias and a lack of realization that a school for students who are unable to act as normal, properly engaged students are not the same as students that go to the Catholic or public high schools of the City of Evansville." *Id.* at 18.

It is undisputed that when Winters grabbed Z.P.'s crotch, Z.P. was not being disruptive and was not presenting a threat to him. In fact, counsel for Winters conceded at oral argument that "these kids" had the same right to be free from unwarranted touching as any other kids The nature of the school could, but in this instance did not, create a threatening environment warranting Winters's conduct. Therefore, we find nothing wrong with Commissioner Hegeman's remarks.

Winters also takes issue with Commission President Brooks, who, according to Winters, "compared the duties of Corporal Winters to himself, a minister, to what Mr. Brooks does at church as opposed to specialized security work at a school requiring armed, on-duty police officers patrolling its halls in order for it to operate on a daily basis." *Id.* at 10. We presume that Winters refers to the following remarks by President Brooks: "I am in my 33rd year of ministry. If I were to do that tomorrow, I would be dismissed, and so would anyone else. If you did it at a bank, someone within a bank inappropriately did that, they would be terminated." Appellant's App. at 79. Winters contends that "[w]hat

is appropriate for a minister on a Sunday is absolutely no reality or reference to what is appropriate for security personnel at an education facility which cannot operate without a police presence." Appellant's Br. at 10.

[17] President Brooks was simply commenting on the impropriety of such conduct in most circumstances, and this did not constitute impermissible bias. An unprovoked and unjustified grabbing of another person's genital area would be extremely inappropriate in any situation and would subject the assailant to severe discipline and criminal charges. *See* Ind. Code § 35-42-2-1 (a person who knowingly or intentionally touches another person in a rude, insolent, or angry manner commits battery, a class B misdemeanor).

## Section 3 – The decision to terminate Winters for grabbing Z.P.'s crotch is supported by substantial evidence and is not arbitrary and capricious.

[18] Finally, as for the proportionality of the punishment, Winters asserts that this "was a one-time event where no harm occurred to anyone" and points out that several AIS employees and fellow officers testified on his behalf and disagreed with the proposed discipline based on his character and service. *Id*. at 15.[8]

---

[8] In his brief, Winters asserts that he "had no disciplinary record." Appellant's Br. at 5 (citing Appellant's App. at 35, 77). The cited pages do not support this assertion, and the City observes that the record is silent regarding Winters's disciplinary history. The City then makes its own extra-record assertion that Winters "received at least two (2) written reprimands and was suspended from duty on at least four (4) separate occasions during which [he] was suspended without pay for a total of thirteen (13) days." Appellee's Br. at 11. Two wrongs do not make a right here. We are unpersuaded by the City's suggestion that it is entitled to relief under Indiana Appellate Rule 66(E) ("The Court may assess damages if an appeal, petition, or motion, or response, is frivolous or in bad faith. Damages shall be in the Court's discretion and may include attorneys' fees.").

Although no evidence was presented regarding whether Z.P. suffered physical or psychological harm, it is undisputed that Winters abruptly grabbed his genital area without provocation. Z.P. was not being disruptive and never presented a threat to Winters. At a minimum, such a touching would be distressing to a reasonable person and could be grounds for criminal charges. We agree with the City that Winters's grabbing of Z.P.'s crotch area "bears directly on his qualifications as an officer and the discharge of his duties." Appellee's Br. at 15. Indeed, Winters does not challenge the Merit Commission's determination that he committed seven violations of EPD rules and regulations.

[19] The amount of evidence regarding the incident for which Winters was disciplined is relatively small, but it is undisputed and sufficiently egregious that a reasonable mind might accept it as adequate to support a conclusion that termination of Winters's employment was the appropriate discipline for his conduct. In other words, we conclude that the Merit Commission's decision is supported by substantial evidence.

[20] We also conclude that the decision is not arbitrary and capricious. "The discipline of police officers is within the province of the executive branch of government, not the judicial branch. For this reason, we will not substitute our judgment for that of the administrative body when no compelling circumstances are present." *McDaniel v. City of Evansville*, 604 N.E.2d 1223, 1225 (Ind. Ct. App. 1992) (citation, quotation marks, and brackets omitted), *trans. denied* (1993). The legislature established merit commissions to permit lay people to

make determinations such as these dealing with police discipline. The Merit Commission, whose members were selected by the City's governing bodies and police department pursuant to our legislature's directive, relied on its expertise in considering the facts and circumstances before it and exercised its considerable discretion in determining the proper consequences for Winters's actions in his part-time job as a school security officer. We cannot say that its decision to terminate Winters for grabbing a teenage student's crotch is patently unreasonable. Therefore, we affirm.

[21] Affirmed.

Robb, J., and Bradford, J., concur.