**FILED**

Aug 29 2017, 8:19 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Andrew R. Duncan
Ruckelshaus, Kautzman, Blackwell,
Bemis & Hasbrook
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Martin R. Lucas
North Judson, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Robert Gray, Jr., <br> *Appellant,* <br><br> v. <br><br> County of Starke, Indiana, <br> *Appellee.* | August 29, 2017 <br><br> Court of Appeals Case No. <br> 64A03-1703-PL-585 <br><br> Appeal from the Porter Superior Court <br><br> The Honorable Mary Harper, Judge <br><br> Trial Court Cause No. <br> 64D05-1603-PL-1980 |

**Bailey, Judge.**

# Case Summary

The Sheriff of Starke County, Indiana recommended the termination of Deputy Robert Gray, Jr. ("Gray") from the Starke County Sheriff's Department after he slapped a pre-trial detainee. After a public hearing, the Starke County Sheriff's Merit Board ("the Merit Board") terminated Gray's employment. The termination was upheld on judicial review and Gray now appeals that order. We affirm.

# Issues

Gray presents two issues for review:

I. Whether, as a matter of law, a termination decision arising from an alleged violation of a law enforcement department rule on use of force must be determined with reference to the excessive force standard of objective reasonableness enunciated in *Graham v. Connor*, 490 U.S. 386 (1989); and

II. Whether the termination is reversible because the trial court erroneously found that the termination decision was supported by substantial evidence by reweighing evidence, assessing witness credibility, and making its own factual findings.

# Facts and Procedural History

Gray was hired in December of 2012 as a member of the Starke County Sheriff's Department. On April 29, 2014, while on-duty in the Starke County Jail, Gray became involved in a verbal and physical incident with a pre-trial

detainee, J.S. As J.S. made noises as if to spit, or as she spat, Gray slapped J.S. and exclaimed, "Don't you f----g spit on people." (Hearing Ex. D.)

[4] Oscar Cowen, the Sheriff of Starke County, and his successor, William Dulin, filed written charges against Gray. As amended, the allegations concerned violations of four sections of the Starke County Sheriff's Department Rules ("Rules"), that is: (1) Rule 4-2.2 Conduct Unbecoming to an Officer, (2) Rule 4-2.21 Treatment of Persons in Custody, (3) Rule 4-2.23 Use of Force, and (4) Rule 4-4.3 Courtesy. The Sheriff charged that Gray "slapped or struck with his hands a custodial prisoner … while she was seated in a restraint chair with her arms restrained," "did shake his finger or hand in the face of a custodial prisoner in a threatening or menacing manner," and "held his hand over the mouth and neck of a custodial prisoner." (Tr. at 12.)

[5] On October 27, 2015, the Merit Board conducted a hearing on the charges. The relevant facts, as found by the Merit Board, included the following:

> [J.S.] was taken to the conference room for causing disturbances to other inmates. Assisting Robert with restraining [J.S.] was Matthew Wiles, an employee of the Starke County Sheriff's Department. After being escorted to the conference room, [J.S.] was initially left but monitored by video. On numerous occasions she ran into the conference room door and made loud screaming noises. … [J.S.] was seen punching a sleeping pad numerous times and taking her clothes partially off. At some point, Robert spoke with [J.S.] and attempted to get her to calm down. [J.S.] put her fingers near Robert's face. Robert placed [J.S.]'s arm in a lock behind her to prevent her from swinging at him or causing him physical injury. Once released, [J.S.] became

agitated again.  At this time, Robert and Matthew Wiles decided to place [J.S.] in a restraint chair.

While attempting to restrain [J.S.]'s feet in the restraint chair, Robert forcefully and open-handedly slapped [J.S.] across the left side of her face.  … Following the slap across the face, Robert cupped [J.S.]'s chin with his hand and pushed her head backwards.  After she was secured, Robert and Matthew exited the conference room.

It was common knowledge that [J.S.] suffered from several mental illnesses. … Robert testified that he knew [J.S.] was mentally ill at the time of this incident. . . .

The evidence supports that [J.S.] was making vulgar comments to Robert and Matthew Wiles before and during the time that they were restraining her.  … The video does not show whether [J.S.] actually spit on Robert.

(App. at 29-31.)[1]

[6]     The Merit Board additionally entered findings and conclusions thereon stating in relevant part:

There is no dispute that [J.S.] was in custody at the time Robert open-handedly slapped her across the face.  The evidence supports the conclusion that she was partially restrained in a restrain[t] chair and did not have all her extremities.

---

[1] Much of the language appearing in the Findings of Fact section is actually a recitation or summary of testimony presented, as opposed to findings of fact derived from that testimony.

There is no direct evidence that [J.S.] spat upon Robert. There is circumstantial evidence suggesting that this may have happened; however, the Board is unable to say with absolute certainty whether she spat on Robert. The Board finds that regardless of whether [J.S.] actually spat on Robert, its decision in this matter would remain the same.

Robert used excessive force under the circumstances and in violation of the legal authority on excessive force. Under the totality of the circumstances, it was not reasonable for Robert to open-handedly slap [J.S.] across the face when she was partially restrained. There is no evidence that [J.S.] was attempting to strike or cause substantial injury to Robert at the time he slapped her across the face. Rather, at the time of the slap, [J.S.] did not pose an immediate threat to the safety of Robert or others.

It appears to the Board that Robert slapped [J.S.] out of anger rather than out of fear of bodily injury to himself. Furthermore, had [J.S.] in fact spit on Robert's face, the Board finds that Robert could have used alternative, reasonable techniques to redirect the threat without engaging in an excessive slap on her face.

Robert engaged in conduct that is unbecoming to an officer in violation of Rule 4-2.2 when he slapped [J.S.] across the face. He engaged in conduct on duty that reflected unfavorably upon the Department and which brings the Department into disrepute. The Board finds that his conduct was especially shameful in light of the fact that Robert had knowledge about [J.S.]'s mental illnesses.

Robert mistreated a person in custody in violation of Rule 4-2.21 when he slapped [J.S.] across the face at a time when she did not pose an immediate threat to him or others.

> Robert used more force than what was reasonably necessary under the circumstances in violation of Rule 4-2.23.

> Robert failed to use courtesy in violation of Rule 4-4.3. Robert failed to control his temper, and while acting in the course of his duties, and engaged in a violent act against an inmate.

(App. at 33.)

[7] The Merit Board ordered that Gray's employment be immediately terminated. On January 8, 2016, Gray brought a civil action for judicial review naming Starke County ("the County") as the defendant. His petition for change of venue from the county was granted on February 8, 2016.

[8] On October 31, 2016, argument of counsel was heard at a hearing on the petition for judicial review, conducted in the Porter Superior Court. On March 1, 2017, the trial court issued an order affirming the employment termination decision. This appeal ensued.

# Discussion and Decision

## Standard of Review

[9] Indiana Code Section 36-8-10-11(a) provides in relevant part: "The sheriff may dismiss, demote, or temporarily suspend a county police officer for cause after preferring charges in writing and after a fair public hearing before the board, which is reviewable in the circuit court." Subsection (d) provides that the appeal is to be taken by filing in court, within thirty days after the decision is

rendered, a verified complaint stating in a concise manner the general nature of the charges, the decision, and a demand for relief. The appeal shall be heard de novo only upon any new issues related to the charges. The final judgment may be appealed by either party. I.C. § 36-8-10-11(h). Because discipline is to be imposed only "for cause," the allegations must bear a reasonable relationship to the officer's fitness or capacity to hold his or her job. *Pope v. Marion Cty. Sheriff's Merit Board*, 157 Ind. Ct. App. 636, 301 N.E.2d 386, 391 (1973).

[10] Our review of an administrative action is very limited. *Bird v. Cty. of Allen*, 639 N.E.2d 320, 327 (Ind. Ct. App. 1994). We give deference to the expertise of the administrative body, which includes a police merit commission. *Id.* We will not reverse its discretionary decision without a showing that the decision was arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with the law. *Id.* Our review is limited to determining whether the administrative body adhered to proper legal procedure and made a finding based upon substantial evidence in accordance with appropriate constitutional and statutory provisions. *Id.* We do not substitute our judgment for that of the administrative body, or modify a penalty imposed in a disciplinary action, absent a showing that the action was arbitrary and capricious. *Id.* at 327-28.

[11] "An arbitrary and capricious decision, which the challenging party bears the burden of proving, is a decision which is willful and unreasonable, made without any consideration of the facts and in total disregard of the circumstances, and lacks any basis which might lead a reasonable and honest person to the same decision." *Id.* at 328. Substantial evidence is such relevant

evidence as a reasonable mind might accept as being adequate to support a conclusion. *Id.* We do not reweigh the evidence upon review. *Id.*

[12] Additionally, "[t]he discipline of police officers is within the province of the executive branch of government, not the judicial branch. For this reason, we will not substitute our judgment for that of the administrative body when no compelling circumstances are present." *Winters v. City of Evansville*, 29 N.E.3d 773, 781 (Ind. Ct. App. 2015) (citation omitted).

## Violation of Use of Force Rule

[13] One of the Merit Board's conclusions was that Gray violated Rule 4.2-23 pertaining to use of force.[2] At the review hearing, Gray argued that the "Board misapplied the law," Tr. at 10, and urged that the trial court consider the evidence of his use of force in light of the objective reasonableness standard described in *Graham*, and applied in *Prymer v. Ogden*, 29 F.3d 1208 (7th Cir. 1994). The County argued that those cases involved tort claims against a government unit and their objective reasonableness standard did not control employment disciplinary proceedings. The County further argued that it lacked standing to assert that Gray had committed a Constitutional tort against J.S., but had merely alleged Rule violations. The trial court agreed with the Merit Board that *Graham* was instructive but not controlling.

---

[2] The Rule required that "Employee shall not use more force in any situation than is reasonably necessary under the circumstances." (Tr. at 19.)

On appeal, Gray argues that the termination order must be reversed because he was entitled to – and did not receive – review of his use of force consistent with the guidance of *Graham* and *Prymer* although the Merit Board purportedly "invited [that] review." Appellant's Brief at 13. Acknowledging that other Rule violations were found, he further argues that the other charges arose from and were essentially part of his use of force.[3] At bottom, his contention is that an officer who uses force cannot be dismissed for conduct that is "objectively reasonable" and his conduct was objectively reasonable because J.S. had become "an attacker." Appellant's Brief at 26.

The primary case upon which Gray relies is *Graham*. In a 42 U.S.C. § 1983 claim, Graham sought an award of damages for injuries allegedly sustained when police officers used physical force against him during an investigatory stop. *Graham*, 490 U.S. at 395. The district court entered a directed verdict and the appellate court affirmed the judgment. On certiorari, the Court was called upon to decide what standard should govern when a free citizen made a claim that a police officer used excessive force in an arrest, investigatory stop, or seizure. *See id.* The Court determined that such claims are analyzed under the

---

[3] Rule 4-2.21 provided: "Employees shall not mistreat persons who are in their custody. Employees shall handle such persons in accordance with law and established Departmental Procedures." (Order at 11.)

Rule 4-4.3 stated in part: "Officers shall be tactful in the performance of their duties, shall control their tempers, and exercise the utmost patients [sic] and discretion, and shall not engage in argumentative discussion even in the face of extreme provocation; and (B) in the performance of their duties, Officers shall not use unreasonable coarse, violent, profane, or insolent language or gestures. …" (Order at 12.)

Fourth Amendment to the United States Constitution and its "reasonableness" standard," as opposed to a "substantive due process" standard. *Id.*

[16] The "reasonableness" inquiry in an excessive force case is an objective one; the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. *Id.* at 396. The "facts and circumstances" include the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of officers, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *See id.* Gray does not argue that the circumstances of the instant case mirror those of *Graham* or that the types of claim are similar. Instead, he asserts that the "objective reasonableness" standard enunciated in *Graham* uniformly controls in cases where excessive force is alleged.

[17] However, Gray argues that the facts of the instant case are remarkably similar to those in *Prymer*, also a § 1983 case, where an arrestee threatened to spit on an officer and the officer responded with force. 29 F.3d at 1208. Prymer was handcuffed and en route to a police vehicle when he made a gurgling noise as if to spit on Officer Ogden. Officer Ogden struck Prymer in the forehead with a straight-arm stun technique and thus re-directed Prymer's head. *See id.* at 1211. The district court concluded that the straight arm stun technique was justified under the objectively reasonable standard. *Id.* Judgment was granted for the defendants on the § 1983 claim; the appellate court affirmed the judgment.

[18] More recently, in *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (June 22, 2015), the Court clarified that the *Graham* standard of objective reasonableness is not limited to circumstances where a free citizen is being taken into custody. "[T]o prove an excessive force claim, a pretrial detainee must show … that the officers' use of that force was objectively unreasonable." *Id.* at 2470. Objective reasonableness turns on the "facts and circumstances of each particular case." *Id.* at 2473 (citing *Graham*, 490 U.S. at 396.)

[19] Also, as Gray observes, the *Graham* "reasonableness standard" has been examined in Indiana in non-tort cases; that is, it has had application where a criminal defendant has raised as a defense that his non-compliance with an officer was in response to the officer acting unlawfully. Our Indiana Supreme Court has acknowledged that "[a]n officer is not lawfully engaged in the execution of his duties when he uses unconstitutionally excessive force." *Love v. State*, 73 N.E.3d 693, 697 (Ind. 2017) (citing *Shoultz v. State*, 735 N.E.2d 818, 823 (Ind. Ct. App. 2000)). Thus, the objective reasonableness standard of the Fourth Amendment may apply to a tort claim by a person allegedly injured while either being taken into custody or already in custody, or it may apply when a claim of unconstitutional excessive force is raised as a criminal defense.

[20] Here, however, the Merit Board was not tasked with determining whether Gray was lawfully engaged in the execution of his duties as that might bear some relationship to a criminal defense. The Merit Board was not involved in a tort claim or litigation involving an allegation that Gray had deprived J.S. of a constitutional right. Rather, the matter before the Merit Board for disposition

was whether Gray should be disciplined for violation of department rules having a reasonable relationship to his fitness and capacity to hold the job of Deputy Sheriff.

[21] Requiring that the Fourth Amendment analysis and standard be invoked in all cases where police unfitness to serve is alleged would not comport with the public policy of this State. We have said, "From the very nature of a policeman's duties, his conduct in the community on and off duty must be above reproach." *Pope*, 301 N.E.2d at 391. The wrongdoing need not rise to the level of a constitutional tort to be actionable. *See Chesser v. City of Hammond, Indiana*, 725 N.E.2d 926, 930 (Ind. Ct. App. 2000) (evidence supported dismissal for conduct unbecoming an officer where officer had "used an unreasonable and excessive amount of force against his wife" and "lack[ed] ability to control his temper in certain situations"). Here, the Merit Board was not required to evaluate the allegation regarding the "Use of Force" Rule, or derivative allegations, with specific reference to the *Graham* "objective reasonableness" standard.[4]

---

[4] This is not to say as a corollary that safety boards and reviewing courts must ignore *Graham*. *See, e.g., Chelf v. Civil Serv. Comm'n of the City of Davenport*, 515 N.W.2d 353, 355 (Iowa Ct. App. 1994) (in considering whether the statutory language providing that an officer was justified in using force "reasonably believed to be necessary to effect the arrest" embodied a subjective or objective standard, the Court determined that the standard was objective and found "support" in *Graham*).

# Evidentiary Support

[22]  Gray complains that the reviewing court below "reweighed" evidence, made additional findings in support of the termination decision, and "substituted" its decision for that of the Merit Board. Appellant's Brief at 12. He asserts that he is entitled to a reversal, or at minimum a remand, on this basis. As best we understand Gray's contentions, he urges that a decision supported by substantial evidence may nevertheless be reversed when the reviewing court comments upon additional evidence not included in the Merit Board's findings and conclusions. We acknowledge that the reviewing court commented upon officer logs, a videotape, and Gray not making movements as if to remove spittle; the court also referred to Gray's use of profanity, something not specifically addressed in the Merit Board order. However, a claim that a dismissal order is arbitrary and capricious because there was more than enough evidence discussed on review does not comport with our appellate standard of review.

[23]  The salient inquiry is whether the termination order is unsupported by substantial evidence, that is, "relevant evidence which a reasonable mind might accept as adequate to support a conclusion." *Bird*, 639 N.E.2d at 328. The Merit Board received, by testimony and videotape, evidence that J.S., whom Gray knew to be mentally ill, was partially strapped into a restraint chair when Gray slapped J.S. across the face with an open hand. The Merit Board did not make conclusions that were "willful and unreasonable," *see id.*, in determining that Gray mistreated a person in custody, used more force than was necessary,

failed to maintain courtesy, and engaged in conduct unbecoming an officer. Substantial evidence supports the Merit Board's findings, and its decision to terminate Gray for violating departmental rules is not arbitrary and capricious.

# Conclusion

[24] The excessive force objective reasonableness standard, as contemplated in *Graham* and its progeny, may be instructive but does not provide a minimum threshold for termination of police employment when an allegation has been made that the officer violated an internal use of force rule. Gray has not shown that the Merit Board's discharge decision was contrary to law on this basis. Gray has not shown that the decision is arbitrary and capricious as unsupported by substantial evidence.

[25] Affirmed.

Vaidik, C.J., and Robb, J., concur.