## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 14 2018, 8:48 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jeffrey S. McQuary
TOMPKINS LAW
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

William W. Barrett
Daniel J. Layden
WILLIAMS BARRETT &
WILKOWSKI, LLP
Greenwood, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Bryan Burton,

*Appellant-Petitioner,*

v.

City of Franklin,

*Appellee-Respondent.*

December 14, 2018

Court of Appeals Case No.
18A-MI-1358

Appeal from the Johnson Superior Court

The Honorable Marla K. Clark, Judge

Trial Court Cause No.
41D04-1705-MI-106

**Bailey, Judge.**

# Case Summary

City of Franklin Chief of Police Tim O'Sullivan ("Chief O'Sullivan") recommended the termination of Bryan Burton ("Burton") from the City of Franklin police force following Burton's arrest for domestic violence. The Franklin Police Merit Commission ("the Commission") conducted a hearing and terminated Burton's employment. The termination decision was affirmed by the trial court and Burton now appeals. We affirm.

# Issues

Burton presents two consolidated and restated issues for our review:

  I.    Whether the termination decision is reversible because Burton was deprived of procedural due process; and

  II.   Whether the termination decision is unsupported by substantial evidence.

# Facts and Procedural History

On October 23, 2016, Burton's fourteen-year-old stepson called 9-1-1 and reported that Burton and his wife, Jordan Burton ("Jordan"), were arguing about their youngest child and that, during the argument, Burton had grabbed Jordan's arm. Franklin Police Officers Jason Hyneman, Bryan Goldfarb, and Sergeant Lucas responded. Jordan appeared to be upset and displayed her arm, which had three lineal red lines on it. She reported that Burton had grabbed her. She also expressed some concern about bias among Burton's fellow police

officers; in response, the supervising officer made the decision to turn the investigation over to the Johnson County Sheriff's Department.

[4] Sheriff's Deputy Evan Preston arrived on the scene shortly thereafter and began to interview the Burtons and their teenaged children. He observed an injury to Jordan's arm. Burton denied having grabbed Jordan. One of the teenagers reported that Burton had grabbed Jordan and interfered with the operation of her vehicle. Another teenager reported that Jordan had struck him in the face. Both Jordan and Burton were arrested.[1]

[5] That same evening, Chief O'Sullivan was informed about Burton's arrest. On October 24, 2016, Chief O'Sullivan met with Burton and issued him a five-day suspension letter. On October 25, 2016, Chief O'Sullivan preferred charges against Burton, alleging that he had engaged in conduct unbecoming an officer and conduct injurious to the public peace and welfare. The first charge was related to the conduct underlying the arrest for felony battery and the second charge was related to Burton's alleged untruthfulness on October 19, 2016, when discussing the state of his marriage in a conference with Chief O'Sullivan.

[6] At Burton's request, the Commission conducted an evidentiary hearing on April 19, 2017. The Commission found that Burton had engaged in both unbecoming and injurious conduct; it approved Chief O'Sullivan's recommendation that Burton's employment be terminated. Burton sought

---

[1] Ultimately, a special prosecutor declined to bring criminal charges against either of the Burtons.

judicial review of the disciplinary decision, pursuant to Indiana Code Section 4-21.5-1-1.  On March 7, 2018, the trial court heard argument of counsel.  On May 15, 2018, the trial court issued its decision affirming the Commission's disciplinary decision.  Burton now appeals.

# Discussion and Decision

## Standard of Review

[7]   Indiana Code Section 36-8-3.5-17(b) provides in relevant part that a police department member may be disciplined if "the commission finds the member guilty of a breach of discipline, including: … (G) conduct injurious to the public peace or welfare; [or] (H) conduct unbecoming a member[.]"  The discipline may include suspension, demotion, or dismissal.  *See id.*  Pursuant to subsection (h), the misconduct is to be established by a preponderance of the evidence.  A member who is aggrieved by a decision of the commission to dismiss him may appeal to the circuit or superior court of the county in which the unit is located.  I.C. § 36-8-3.5-18.

[8]   Our review of an administrative action is very limited.  *Gray v. Cty. of Starke*, 82 N.E.3d 913, 917 (Ind. Ct. App. 2017).  We give deference to the expertise of the administrative body, which includes a police merit commission.  *Id.*  We will not reverse its discretionary decision absent a showing that the decision was arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with the law.  *Id.*  Our review is limited to determining whether the administrative body adhered to proper legal procedure and made a finding

based upon substantial evidence in accordance with appropriate constitutional and statutory provisions. *Id.* We will not substitute our judgment for that of the administrative body, and we will not modify a penalty imposed in a disciplinary action, absent a showing that the action was arbitrary and capricious. *Id.*

[9] "An arbitrary and capricious decision, which the challenging party bears the burden of proving, is a decision which is willful and unreasonable, made without any consideration of the facts and in total disregard of the circumstances, and lacks any basis which might lead a reasonable and honest person to the same decision." *Bird v. Cty. of Allen*, 639 N.E.2d 320, 328 (Ind. Ct. App. 1994). Substantial evidence is such relevant evidence as a reasonable mind might accept as being adequate to support a conclusion. *Id.* We will not reweigh the evidence upon review. *Id.*

[10] In addition, "[t]he discipline of police officers is within the province of the executive branch of government, not the judicial branch. For this reason, we will not substitute our judgment for that of the administrative body when no compelling circumstances are present." *Winters v. City of Evansville*, 29 N.E.3d 773, 781 (Ind. Ct. App. 2015) (citation omitted).

## Procedural Due Process

[11] At the hearing, Burton argued that Chief O'Sullivan failed to adequately investigate the domestic incident before preferring charges. Specifically, he contended that Chief O'Sullivan should have initiated an internal investigation

independent of that undertaken by the Johnson County Sheriff's Department. In his deposition, Chief O'Sullivan had agreed that, although he had the power to convene an internal review panel, he had declined to do so. Having knowledge of Burton's disciplinary history, Chief O'Sullivan opined that "the arrest was enough." (App. Vol. II, pg. 25.)

[12] Burton now asserts that Chief O'Sullivan "violated [I.C. § 36-8-3.5-14] that required him to conduct an investigation before preferring charges." Brief of Appellant at 20. Burton directs our attention to the language of Indiana Code Section 36-8-3.5-14(c):

> If the chief of the department, after an investigation within the department, prefers charges against a member of the department for an alleged breach of discipline … a hearing shall be conducted upon the request of the member.

With emphasis upon the phrase "after an investigation within the department," Burton argues that the disciplinary statute mandates an internal departmental investigation before preferring charges. The interpretation of a statute is purely a question of law. *B.K.C. v. State*, 781 N.E.2d 1157, 1167 (Ind. Ct. App. 2003). Our purpose is to ascertain and give effect to the intent of the legislature and if the text is clear and unambiguous, we merely apply the plain meaning of the statute. *Id.* We will interpret ambiguous text using established principles of statutory construction; that is, we will construe the statute in accordance with its purpose and the statutory scheme of which it is a part. *Id.* We presume that

the legislature intends for us to apply language in a logical manner consistent with the statute's underlying policy and goals. *Id.*

[13] The City of Franklin contends that the purpose and objective of subsection (c) is that the accused officer possesses the right to a hearing, upon request. We agree. Although the language contemplates that an investigation precedes the preferring of charges, no means or manner is described and the statutory objective – right to a hearing – is not conditioned upon a departmental investigation. Moreover, the Legislature could not logically have intended to prevent a department from deferring investigation to another department in the case of a potential conflict of interest.

[14] That said, the record reveals that Chief O'Sullivan did not prefer charges in a vacuum. He received and reviewed the reports of the three first-responding City of Franklin police officers. He also reviewed the 9-1-1 dispatcher's comments. He conferred with his deputy chief of police and with members of the Johnson County Sheriff's Department, who had taken over the investigation. In sum, charges were not preferred absent investigation.

[15] Burton suggests that, had Chief O'Sullivan personally and adequately investigated, he would have learned that no criminal charges were filed against Burton in connection with the alleged battery upon Jordan. But Chief O'Sullivan's ability to pursue disciplinary action was not contingent upon the filing of criminal charges by the Johnson County Prosecutor. We have observed, "[f]rom the very nature of a policeman's duties, his conduct in the

community on and off duty must be above reproach." *Pope v. Marion Cty. Sheriff's Merit Board*, 157 Ind. App. 636, 301 N.E.2d 386, 391 (1973). Consistent therewith, Indiana Code Section 36-8-3.5-17 does not require the pursuit of criminal charges to support the imposition of police discipline.

[16] Burton also argues that the Commission president, John Shafer ("Shafer"), "violated due process by not recusing himself despite bias against Burton." Appellant's Brief at 24. Shafer acknowledged that he had, in disciplinary proceedings conducted in 2015, asked Burton whether he had a drug or alcohol problem. Those disciplinary proceedings did not involve an allegation of substance abuse. Shafer did not recall the exact words he used, but he did recall his motivation as a desire to assist Burton. Burton argues that Shafer demonstrated a bias against Burton, that is, a long-standing belief that Burton was unfit to serve as a police officer.

[17] "Due process in administrative hearings requires that all hearings be conducted before an impartial body." *Ripley Cty. Bd. of Zoning v. Rumpke of Indiana*, 663 N.E.2d 198, 209 (Ind. Ct. App. 1996). This dictates that agency members may not be swayed in their decisions by preconceived biases and prejudices. *Id.* We presume, however, that administrative agencies will act properly with or without recusal of allegedly biased members. *Id.* A mere allegation of bias is insufficient; a reviewing court will not interfere with the administrative process absent a demonstration of actual bias. *New Trend Beauty Sch., Inc. v. Indiana State Bd. of Beauty Culturist Examiners*, 518 N.E.2d 1101, 1105 (Ind. Ct. App. 1988).

[18] As Burton observes, in *Ripley*, a panel of this Court did not find clear error in the trial court's determination that a member of an administrative body was biased where he had made comments highly critical of a person who later appeared before that board. 663 N.E.2d at 209. There, a board of zoning appeals member owned land near the petitioner's landfill, and had complained about the landfill operations, had led an effort to enforce a 300-foot setback against the petitioner, and had made comments including that "if he could run Rumpke out of Ripley County he would." *Id.* at 210. The instant circumstances are not akin to those in *Ripley*. Shafer had interjected into prior disciplinary proceedings the idea that Burton might benefit from substance abuse therapy. Although the offer of assistance may have been misguided, there is no indication that Shafer had personal animus against Burton or a potential for personal gain. Burton has not shown that he was deprived of a hearing before an impartial body.

## Substantial Evidence

[19] At the administrative hearing, photographic and testimonial evidence was introduced regarding Jordan's injuries. Burton does not challenge the Commission's finding that, more probably than not, Burton touched his wife on October 23, 2016, in a rude, insolent or angry manner, and caused injury. However, he argues at some length that he was not deceptive in communicating with Chief O'Sullivan on October 19, 2016, regarding the state of the Burton marriage.

The Commission heard evidence suggesting that Burton's marriage had been troubled for some time and he had complained at work. However, on October 19, 2016, he assured Chief O'Sullivan that things were "perfect, great, or couldn't be better." (App. Vol. III, pg. 40.) This reassurance deprived the chief of the opportunity to refer Burton to an employee assistance program. A few days later, after the domestic incident, Burton wrote out a six-page statement in which he acknowledged that he and Jordan had experienced marital difficulties over some time. His current insistence that marriages have good days and bad days and his comments should refer to an isolated time frame, a good day, is a request to reweigh evidence. We have already observed, substantial evidence is such relevant evidence as a reasonable mind might accept as being adequate to support a conclusion, and we will not reweigh evidence upon review. *Bird*, 639 N.E.2d at 328. The Commission did not enter an arbitrary and capricious decision unsupported by substantial evidence.

# Conclusion

Burton was not denied procedural due process. Substantial evidence supports the Commission's findings. The trial court properly declined to overturn the disciplinary decision of the Commission.

Affirmed.

Bradford, J., and Brown, J., concur.