# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 26 2020, 10:14 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Liberty L. Roberts
Church Church Hittle & Antrim
Noblesville, Indiana

ATTORNEY FOR APPELLEE

Eric A. Frey
Terre Haute, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Town of West Terre Haute, <br> *Appellant-Defendant,* <br><br> v. <br><br> Jonathan Stevens, Sr., <br> *Appellee-Plaintiff.* | May 26, 2020 <br><br> Court of Appeals Case No. 19A-CT-2754 <br><br> Appeal from the Vigo Superior Court <br><br> The Honorable John T. Roach, Judge <br><br> Trial Court Cause No. 84D01-1901-CT-355 |

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellant-Defendant, Town of West Terre Haute (Town), appeals the trial court's grant of a petition for judicial review filed by Appellee-Plaintiff, Jonathan Stevens (Stevens), reversing the Town's decision terminating him from his employment as a police officer.

We affirm.

## ISSUE

The Town presents this court with three issues on appeal, which we consolidate and restate as the following single issue: Whether the trial court properly granted Stevens' petition for judicial review thereby reversing the Town's decision terminating him from his employment as a police officer.

## FACTS AND PROCEDURAL HISTORY

In 2013, Stevens was employed by the Town as a police officer. On October 31, 2017, Stevens was arrested and charged with Level 6 felony domestic battery committed in the presence of a child less than sixteen years old, and Class B Misdemeanor disorderly conduct. Prior to these charged crimes, Stevens had never been reprimanded or disciplined for any violation, and he had been promoted to a supervisory role in the police department.

On January 8, 2018, Stevens was placed on unpaid leave until there was a final resolution of his criminal charges. Sometime in 2018, prior to considering whether he should plead guilty to his charged crimes, Stevens discussed the

status of his employment with the Town's Chief of Police William Bark (Chief Bark) and he asked what would happen if the Level 6 felony domestic battery case was dismissed or terminated in his favor. After about a week, Chief Bark advised Stevens that he had spoken to the Safety Board, which is the legislative body of the Town that deals with police discipline and comprised of three members, Chuck Stranahan (Stranahan), Shane Smith (Smith), and Jim Griffin (Griffin). Chief Bark informed Stevens that two members, including Stranahan, had advised him that Stevens would remain employed as long as Stevens was convicted for disorderly conduct and not to the domestic battery. Additionally, on October 25, 2018, Stevens' wife, Heather Stevens (Heather), called Stranahan, and while she could not reach Stranahan, Stranahan returned her call later. Heather put Stranahan on speakerphone, and both Stevens and Heather heard Stranahan advise that Stevens would keep his job as long as Stevens plea was to the disorderly conduct and not the domestic battery charge.

[6] Armed with Chief Bark's and Stranahan's assurance, Stevens sought his hearing to be moved up so that he could change his plea. On November 13, 2018, Stevens pleaded guilty to the Class B misdemeanor disorderly conduct, and the State agreed to dismiss the Level 6 felony domestic battery. On the same day Stevens pleaded guilty, Stevens met with Chief Bark. Chief Bark then met with the Safety Board and recommended that in light of Stevens' plea, Stevens should be reinstated as a full-time officer with one week of unpaid leave. An executive session by the Safety Board was scheduled for November 19, 2018, to discuss what disciplinary actions would be taken against Stevens'

based on his conviction. The Town's attorney, Chris Gambill (Attorney Gambill) was requested to attend the executive session, however, due to a conflict of interest, Attorney Jared Modesitt (Attorney Modesitt) assumed his role. Attorney Modesitt advised the Safety Board of the applicable statute for police disciplinary matters. After his presentation, it was made clear to Attorney Modesitt that Stranahan and Smith would vote to terminate Stevens as an officer, while Griffins would vote to retain Stevens. The Safety Board advised Attorney Modesitt to draft a motion that would be presented at the following meeting.

[7] On November 26, 2018, the Safety Board conducted a regular session. Stevens and Heather were in attendance. Without any public input, Smith moved to terminate Stevens based on Stevens' conviction for disorderly conduct, Stranahan seconded the motion, and Griffin voted against the motion. Following the vote, Heather stood up and accused Stranahan of lying to her about voting to retain Stevens. Stranahan nodded his head and admitted to the accusation by saying, "Yes. Yes, I did." (Appellant's App. Vol. II, p. 67). On the same day, Stevens was issued a written Notice of Dismissal (Notice) pursuant to Indiana Code section 36-8-3-4, stating that the Safety Board had determined that he would be disciplined by dismissal from the West Terre Haute Police Department as a result of his conviction. According to the Notice, Stevens was required to request a hearing within five days after being served with the Notice. Stevens timely filed his hearing request.

[8] A disciplinary hearing was conducted on December 19, 2018. Both Chief Bark and former Chief of Police Donald Lark (Chief Lark) testified that they had the discretion to recommend a candidate to be hired as an officer if they had a misdemeanor conviction. Chief Bark testified that Stevens' Class B misdemeanor conviction would not have automatically prevented him from being able to serve as a police officer, and he was of the opinion that Stevens was a very competent police officer who had never been disciplined for any prior violations.

[9] At the disciplinary hearing, Stevens did not dispute that he entered a plea agreement and that he had been convicted for disorderly conduct. However, Stevens claimed that he was under the impression that he would retain his job based on his earlier conversation with Chief Bark, and Stranahan's phone call to his wife. Stevens also presented evidence that Stranahan was racially biased against him. Specifically, Stevens presented evidence that prior to serving as a member of the Safety Board, Stranahan served as the water superintendent for the Town. In February 2013, Stranahan, made a racial comment in the presence of then former Chief Lark, about how he killed a "whole village of niggers" while playing a video game. (Appellant's App. Vol. II, p. 198). When Chief Lark admonished Stranahan for the disparaging racial remark, Stranahan looked at Chief Lark and stated that he was running for Town Council/Safety Board in the next election and he knew how he was going to win. Stranahan explained that he would "pitch" his campaign by telling everyone in town that he would "fire the fucking nigger" that worked for former Chief Lark.

(Appellant's App. Vol. II, p. 199). At the time, Stevens was the only African American officer on active duty. Stevens further presented evidence that on March 11, 2013, Stranahan was disciplined for his racial insults toward Stevens, Stranahan was required to offer an apology letter to Stevens, and that apology was to also include assurances that his conduct/behavior would not occur again. Following the incident, Stranahan was elected to the Town Council where he began serving as member of the Safety Board.

[10] At the close of the hearing, the Safety Board took the matter under advisement, proposed findings of fact and conclusions of law were ordered to be submitted by January 4, 2019, and a public meeting was scheduled for January 9, 2019. On January 4, 2019, the parties timely submitted their proposed findings of fact and conclusion thereon. Stevens additionally filed a motion to disqualify Stranahan, primarily arguing that Stranahan was racially biased against him and that Stranahan had committed fraud since he had assured Stevens that the guilty plea for disorderly conduct would not cost him his job. Additionally, Stevens filed a post-hearing brief recapping Stranahan's racial bias against him, and he argued that he would be denied due process if Stranahan was permitted to participate in any disciplinary decision against him.

[11] On January 9, 2019, Attorney Gambill, as hearing officer, entered an order denying Stevens' motion to disqualify Stranahan after finding that Stranahan's 2013 racial slur against Stevens and Stranahan's refusal to apologize to Stevens or the Town "bore no relation to the events associated with Stevens' disciplinary action." (Appellant's App. Vol. II, p. 153). Attorney Gambill also

found that Stevens did not cite any evidence in his motion to disqualify Stranahan on the premise that Stranahan would personally benefit from Stevens' dismissal as an officer.

[12] On January 10, 2019, during a regular session, Smith and Stranahan voted to terminate Stevens from his employment, while Griffin voted to retain Stevens. The Safety Board then adopted the findings of fact and conclusion of law submitted by the Town. Stevens thereafter sought judicial review of the disciplinary decision to terminate him as an officer, and following an evidentiary hearing, the trial court reversed the Safety Board's decision by entering findings of fact and conclusions thereon.

[13] The Town now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

## I. *Standard of Review*

[14] Indiana Code section 36-8-3-4 sets out the procedure for disciplining, demoting, or dismissing police officers. *Hilburt v. Town of Markleville*, 649 N.E.2d 1036, 1037 (Ind. Ct. App. 1995), *trans. denied*. Such discipline may follow a "finding and decision of the safety board that the [officer] has been . . . guilty" of certain enumerated conduct, including a violation of rules, disobedience of orders, and conduct unbecoming an officer. Ind. Code § 36-8-3-4(b). The officer must be given an opportunity for a hearing, and if he seeks a hearing, he must be given notice of the charges and the specific conduct that comprises the charges. I.C. § 36-8-3-4(c). The decision of the board shall contain specific findings of fact.

I.C. § 36-8-3-4(e). These findings must be sufficient to provide for meaningful judicial review. *Koeneman v. City of New Haven*, 506 N.E.2d 1135, 1137 (Ind. Ct. App. 1987), *trans. denied*.

[15] The decision of the safety board may be appealed by filing a verified complaint. I.C. § 36-8-3-4(f). But the "decision of the safety board is considered *prima facie* correct, and the burden of proof is on the party appealing." I.C. § 36-8-3-4(h). Our review of an administrative action is very limited. *Gray v. Cty. of Starke*, 82 N.E.3d 913, 917 (Ind. Ct. App. 2017). We give deference to the expertise of the administrative body, which includes a police merit commission. *Id.* We will not reverse its discretionary decision absent a showing that the decision was arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with the law. *Id.* Our review is limited to determining whether the administrative body adhered to proper legal procedure and made a finding based upon substantial evidence in accordance with appropriate constitutional and statutory provisions. *Id.* We will not substitute our judgment for that of the administrative body, and we will not modify a penalty imposed in a disciplinary action, absent a showing that the action was arbitrary and capricious. *Id.*

[16] "An arbitrary and capricious decision, which the challenging party bears the burden of proving, is a decision which is willful and unreasonable, made without any consideration of the facts and in total disregard of the circumstances, and lacks any basis which might lead a reasonable and honest person to the same decision." *Bird v. Cty. of Allen*, 639 N.E.2d 320, 328 (Ind. Ct.

App. 1994). Substantial evidence is such relevant evidence as a reasonable mind might accept as being adequate to support a conclusion. *Id.* We will not reweigh the evidence upon review. *Id.*

[17] In addition, "[t]he discipline of police officers is within the province of the executive branch of government, not the judicial branch. For this reason, we will not substitute our judgment for that of the administrative body when no compelling circumstances are present." *Winters v. City of Evansville*, 29 N.E.3d 773, 781 (Ind. Ct. App. 2015).

## II. *Analysis*

[18] Following his disciplinary hearing, Stevens filed a motion seeking to exclude Stranahan from making any decision terminating him from his employment. Stevens primarily argued that Stranahan was racially biased against him. After a review of the motion, Attorney Gambill denied Stevens motion after finding that the racially derogatory statements that Stranahan made in 2013 and Stranahan's refusal to apologize to Stevens "bore no relation to the events associated with Stevens' disciplinary action." (Appellant's App. Vol. II, p. 153). The Safety Board proceeded to issue its decision terminating Stevens as an officer. Stevens sought judicial review, and after considering Stevens' claims of racial bias, the trial court concluded as follows:

> Participation in the hearing by Safety Board Member Chuck Stranahan violated [Stevens'] due process rights to a fair hearing before an impartial body. The denial of the motion to disqualify was arbitrary and capricious and not supported by substantial evidence.

At no time did Board Member Stranahan ever purge himself, or correct, the abhorrent, racist remarks he directed at [Stevens]. He then assured plaintiff his job would be secure if entered a plea of guilty to a misdemeanor charge (the sole basis for termination), and almost immediately made it clear he intended to terminate [Stevens] - - an action consistent with his remarks from 2013. When confronted with his deception, Board Member Stranahan acknowledged the same. There is direct, and uncontroverted, evidence of a discriminatory, disqualifying, personal interest. While Mr. Stranahan was a member of the Board when it promoted [Stevens] and hired one other African-American police officer for a part-time position, evidence of his personal participation was inconclusive and failed to break the chain between the events of 2013 and the events of 2018.

Under an objective standard, the probability of actual bias is too high to allow the decision of the Safety Board to stand. *See Withrow v. Larkin*, 421 U.S. 35, 46-47 (1975); *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 883-84 (2009).

(Appellant's App. Vol. II, pp. 11-12). The Town argues that Stevens was not denied due process simply because Stranahan was permitted to participate in the disciplinary decision. It claims that "Stranahan's vote to terminate Stevens was one of two votes to terminate Stevens from the West Terre Haute Police Department. The Hearing Officer evaluated Stevens' Motion to Disqualify and concluded that the comments were too remote in time to make an impact on Stranahan's determination." (Appellant's Br. p. 18).

[19] Due process in administrative hearings requires that all hearings be conducted before an impartial body. *New Trend Beauty Sch. v. Beauty Culturist Examiners*, 518 N.E.2d 1101, 1104-05 (Ind. Ct. App. 1988). This requirement means that

agency members may not be swayed in their decisions by preconceived biases and prejudices. *Id*. at 1105. We presume, however, that administrative agencies will act properly with or without recusal of allegedly biased members. *Id*. When a biased board member participates in a decision, the decision will be vacated. *Couch v. Hamilton Cty, Bd. of Zoning Appeals*, 609 N.E.2d 39, 42 (Ind. Ct. App. 1993). In the absence of a demonstration of actual bias, however, we will not interfere with the administrative process. *New Trend*, 518 N.E.2d at 1105.

[20] Although the disciplinary hearing was centered on the fact that Stevens had been convicted of a crime, Stevens presented evidence that Stranahan was biased against him and therefore implied that the tribunal could not have been impartial. Specifically, Stevens presented evidence of Stranahan's offensive racial statement made in 2013 where Stranahan had stated that his campaign slogan for Town Council would be to "fire" Stevens, "the fucking nigger," that was working for former Chief Lark. (Appellant's App. Vol. II, p. 199). Stevens also presented evidence that even though Stranahan was reprimanded for his 2013 racial slur, as of December 19, 2018, the day when the Safety Board conducted Stevens' disciplinary hearing, Stranahan had never purged himself of the racist comment or issued Stevens a written apology. Another factor that increases Stevens claim of bias is that Stranahan led Stevens to believe that his job was secure if he entered a plea of guilty to a misdemeanor charge, and when Stevens pleaded guilty, Stranahan proceeded to terminate Stevens, an action consistent with the racist remark he made in 2013. It appears that Stranahan

had personal animus against Stevens and had a potential for personal gain if Stevens was fired. Based on the foregoing, Stevens has shown that he was deprived of a hearing before an impartial body and his due process rights were violated. Accordingly, we affirm the trial court's decision.

# CONCLUSION

[21] Based on the foregoing, we conclude that Stevens was denied procedural due process and the trial court properly overturned the disciplinary decision of the Safety Board.

[22] Affirmed.

[23] Mathias, J. and Tavitas, J. concur